**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CINDY RAE TRUJILLO,

      Plaintiff,

vs.                                    Civ. No. 18-638 KK/JHR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant State Farm's Motion for Summary Judgment on Claims of Bad Faith, Violations of the Unfair Insurance Practices Act, § 59A-16-20 NMSA 1997, and Violations of the Unfair Trade Practices Act, §[§] 57-12-1 *et seq[.]* NMSA 2009 (Doc. 51), filed October 7, 2019. The Court, having considered counsel's arguments, the record, and the relevant law, FINDS that the motion is well taken in part and should be GRANTED IN PART, DENIED IN PART, and TAKEN UNDER ADVISEMENT IN PART as set forth below.

## I. Introduction

Plaintiff Cindy Rae Trujillo was in an automobile accident on July 11, 2016, and subsequently made a claim for benefits under the uninsured/underinsured motorist ("UM/UIM") policies issued to her by Defendant State Farm Mutual Automobile Insurance Company. On May 29, 2018, Plaintiff filed suit against Defendant in state court, alleging that Defendant had engaged in various wrongful acts with respect to her claim for benefits. Defendant removed the case to this Court on July 5, 2018, based on diversity of citizenship. In her complaint, Plaintiff asserts claims for breach of contract, insurance bad faith, and violations of the New Mexico Unfair Claims

Practices Act, N.M. Stat. Ann. § 59A-16-20 ("UCPA"),[1] and the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 *et seq.* ("UPA").[2] (Doc. 1-3 at 1.)

Defendant filed the summary judgment motion presently before the Court on October 7, 2019. (Doc. 51.) In it, Defendant seeks summary judgment on Plaintiff's insurance bad faith, UCPA, and UPA claims. (*Id.* at 2.) Plaintiff filed a response in opposition to the motion on October 29, 2019, and Defendant filed a reply in support of it on November 22, 2019. (Docs. 55, 58.)

## II. Facts

### A. Undisputed Material Facts

The parties do not dispute the following material facts:

On July 11, 2016, Plaintiff was driving a 2002 Ford Ranger insured by Defendant. (Doc. 51 at 2-3 ¶¶ 1, 7.) As Plaintiff slowed for a red light, a vehicle driven by Michael Rodriguez hit the rear of Plaintiff's vehicle and pushed it into the vehicle in front of her. (*Id.* at 2 ¶ 2.) The accident caused Plaintiff bodily injuries and damaged her vehicle's front and rear bumpers. (*Id.* at 3 ¶¶ 4, 10.) However, Plaintiff's vehicle "was able to be driven from the scene of the accident." (*Id.* at 3 ¶ 10.)

Mr. Rodriguez admitted liability for the accident, and his insurer, GEICO, offered to settle Plaintiff's claim against him for policy limits of $25,000. (*Id.* at 3 ¶¶ 5, 11.) Plaintiff's counsel asked Defendant to approve the proposed settlement on November 3, 2017, and Defendant did so on November 10, 2017. (*Id.* at 3 ¶¶ 11, 12.)

---

[1] The UCPA is also known as the New Mexico Unfair Insurance Practices Act ("UIPA").

[2] The UPA is also known as the New Mexico Unfair Trade Practices Act ("UTPA").

Defendant identified two automobile insurance policies it issued to Plaintiff that included UM/UIM coverage, one on a 1972 Ford F250 and the other on the 2002 Ford Ranger involved in the accident. (*Id.* at 4 ¶ 15.) Each of these policies provided UM/UIM coverage of $50,000 per person and $100,000 per occurrence. (*Id.*) "Stacking of the available policies would result in a total available UM/UIM coverage in the amount of $75,000. [$50,000 x 2 - $25,000 payment from tortfeasor = $75,000]." (*Id.* at 4 ¶ 16.)

Plaintiff "made a claim for [UIM] benefits under her personal policies" but did not make a "formal demand" for such benefits.[3] (*Id.* at 3 ¶ 6; *id.* at 4 ¶ 17.) On November 17, 2017, Defendant extended to Plaintiff's counsel a verbal offer to settle Plaintiff's UIM claim for $2,000. (Doc. 55 at 3 ¶ 19.) Defendant reiterated this offer in a letter to Plaintiff's counsel dated December 7, 2017. (*Id.* at 3 ¶ 20.)

On March 9, 2018, Plaintiff's counsel asked Defendant to waive its right to subrogation, claiming that Plaintiff could not be made whole if she were required to reimburse Defendant for her accident-related medical expenses from her settlement with Mr. Rodriguez and GEICO. (Doc. 51 at 4 ¶ 13.) Defendant agreed not to pursue subrogation for medical payments coverage on March 26, 2018. (*Id.* at 4 ¶ 14.)

On April 25, 2018, Defendant again offered to settle Plaintiff's UIM claim for $2,000. (Doc. 55 at 3 ¶ 22.) Plaintiff did not respond to Defendant's settlement offers. (Doc. 51 at 4 ¶ 17.)

## B.    Factual Disputes

Plaintiff alleges that, when Defendant offered to settle her UIM claim for $2,000, her accident-related medical bills were $19,026.71. (Doc. 55 at 3 ¶ 21.) Defendant correctly notes

---

[3] Defendant does not explain how Plaintiff "made a claim" for UIM benefits without making a "formal demand" for them, nor does it indicate whether the distinction is material and, if so, why. (Doc. 51 at 3 ¶ 6; *id.* at 4 ¶ 17; *see generally* Docs. 51, 58.)

that Plaintiff has produced no evidence to support this allegation. (Doc. 58 at 2; *see generally* Doc. 55.) Plaintiff also alleges that Defendant did not explain how it determined its settlement offer or valued Plaintiff's claim. (Doc. 55 at 3 ¶ 23.) Defendant disputes this allegation, (Doc. 58 at 2), and points to claim specialist Mark Blasingim's December 7, 2017 letter to Plaintiff's counsel, in which Mr. Blasingim stated:

> [i]t is to my understanding that all of [Plaintiff's] medical bills were paid by her healthcare provider, and she has already received $25,000.00 from the tortfeasor's liability carrier. Based on my information, it appears she has been fully compensated, but I am offering $2,000.00 as a good faith offer in attempt [sic] to resolve her claim.

(Doc. 51-8 at 1.)

### III. <u>General Legal Standards</u>

#### A. Applicable Law in Diversity Cases

The Court has subject matter jurisdiction over this case due to the parties' diversity of citizenship. 28 U.S.C. § 1332(a); (Doc. 1 at 1-8.) "[I]n a federal diversity action, the district court applies state substantive law—those rights and remedies that bear upon the outcome of the suit—and federal procedural law—the processes or modes for enforcing those substantive rights and remedies." *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 668 (10th Cir.) (citation omitted), *cert. denied sub nom. AmeriCulture, Inc. v. Los Lobos Renewable Power, LLC*, — U.S. —, 139 S. Ct. 591 (2018); *see also, e.g., Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."); *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) ("In diversity cases, the *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law.").

A federal court sitting in diversity must apply state substantive law "with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). "The federal court must follow the most recent decisions of the state's highest court," and, "[w]here no controlling state decision exists, . . . must attempt to predict what the state's highest court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). In making this prediction, the court may consider the state's lower court decisions, appellate decisions in other states with similar legal principles, other federal court decisions interpreting the relevant state's law, and "the general weight and trend of authority" in the area of law in question. *Id.* at 666; *accord Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1122–27 (D.N.M. 2019).

**B.     Summary Judgment Standards**

In accordance with the foregoing, although the substantive law of New Mexico governs the Court's analysis of the underlying claims, federal law governs the propriety of granting or denying summary judgment. *Kansas Penn Gaming, LLC v. HV Properties of Kansas, LLC*, 662 F.3d 1275, 1284 (10th Cir. 2011); *Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755, 758 (10th Cir. 2008); *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). Under federal law, summary judgment

> is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quotation marks and brackets

omitted). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

"Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) ("The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."). The movant must

> inform[] the district court of the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the nonmovant bears the burden of persuasion at trial,

> [t]he moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial.

*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003). However,

> a defendant-movant does not discharge its initial burden merely by *asserting* that the nonmovant's evidence is insufficient; rather, the movant discharges its initial burden by *showing* the [c]ourt that the nonmovant's evidence (viewed in the light most favorable to the nonmovant) is insufficient.

*Hem v. Toyota Motor Corp.*, No. 09-CV-888 MCA/RLP, 2010 WL 11434981, at *2 (D.N.M. Dec. 12, 2010) (emphases in original). "[T]he burden on the nonmovant to respond arises only if the summary judgment motion is properly supported"; if it is not, "summary judgment must be denied

*even if no opposing evidentiary matter is presented.*"  *Reed*, 312 F.3d at 1194 (emphasis in original) (quotation marks omitted).

If the movant meets its initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671 (quotation marks omitted); *see also New Mexico v. Gen. Elec. Co.*, 322 F. Supp. 2d 1237, 1251 (D.N.M. 2004), *aff'd in part, dismissed in part on other grounds*, 467 F.3d 1223 (10th Cir. 2006) ("[I]f the movant makes out a prima facie case that would entitle him to a judgment as a matter of law if uncontroverted at trial, summary judgment will be granted unless the opposing party offers some competent evidence that could be presented at trial showing that there is a genuine issue as to a material fact.").  The Court views the facts in the light most favorable to the nonmovant "if there is a genuine dispute as to those facts."  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quotation marks omitted).  However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." *Trainor*, 318 F.3d at 982.  The Court will consider Defendant's motion in light of these standards.

## IV.  <u>Analysis</u>

**A.**     **Plaintiff's Insurance Bad Faith Claims**

The New Mexico Supreme Court has held that

> with insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract. More specifically, this means that an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration.

*Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005, ¶ 13, 145 N.M. 542, 546, 202 P.3d 801, 805; *see also* N.M. U.J.I. 13-1701[4] ("There is implied in every insurance policy a duty on the part of the insurance company to deal fairly with the policyholder."). "[A]n insurer's common law duty to deal in good faith with its insured . . . arises from the nature of the insurance relationship, which is characterized by elements of adhesion, public interest, and fiduciary responsibility." *Sherrill v. Farmers Ins. Exch.*, 2016-NMCA-056, ¶ 36, 374 P.3d 723, 732.

"New Mexico recognizes the tort of bad faith delay or refusal to pay a valid claim by an insured." *Woodmen Acc. & Life Ins. Co. v. Bryant*, 784 F.2d 1052, 1056 (10th Cir. 1986); *see Am. Nat. Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 11, 293 P.3d 954, 958 (recognizing bad faith claim based on insurer's denial of insured's claim); *Travelers Ins. Co. v. Montoya*, 1977-NMCA-062, ¶ 5, 90 N.M. 556, 557, 566 P.2d 105, 106 (recognizing "claim for unreasonable delay, in bad faith, in making payments pursuant to the insurance contract"). "The common law bad faith action sounds in both contract and tort. This reflects New Mexico's public policy in favor of restoring balance to the contractual relationship between the insurer and the insured, and enforcing insurers' public obligation." *Sherrill*, 2016-NMCA-056 at ¶ 36, 374 P.3d at 732 (citing *Sloan v. State Farm Mut. Auto. Ins. Co.,* 2004–NMSC–004, ¶¶ 13, 23, 135 N.M. 106, 85 P.3d 230).

"[A]n insurer acts in bad faith when it denies a first party claim for reasons that are frivolous or unfounded." *Am. Nat. Prop. & Cas. Co.*, 2013-NMCA-013 at ¶ 11, 293 P.3d at 958; *see also, e.g., Sinclair v. Zurich Am. Ins. Co.*, 129 F. Supp. 3d 1252, 1255 (D.N.M. 2015) ("To prove a first-party claim for bad faith failure to pay his claim, [an insured] must prove that [the insurer's] reasons for denying payment of his claim were frivolous or unfounded."); *Chavez v.*

---

[4] The New Mexico Supreme Court's "adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law." *New Mexico v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 796, 867 P.2d 1175, 1178.

*Chenoweth*, 1976-NMCA-076, ¶ 31, 89 N.M. 423, 429, 553 P.2d 703, 709 ("Bad faith means a frivolous or unfounded refusal to pay."). As the New Mexico Supreme Court explained at some length,

> "[u]nfounded" in this context does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer *utterly* fails to exercise care for the interests of the insured in denying or delaying payment on an insurance policy. It means an utter or total lack of foundation for an assertion of nonliability—an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim. It is synonymous with the word with which it is coupled: "frivolous."

*Jackson Nat. Life Ins. Co. v. Receconi*, 1992-NMSC-019, ¶ 56, 113 N.M. 403, 419, 827 P.2d 118, 134 (emphasis in original) (citation, quotation marks, and brackets omitted). "An insurance company has a right to deny a claim without exposure to a bad faith [lawsuit] if it has reasonable grounds to deny coverage." *Sinclair*, 129 F. Supp. 3d at 1255; *Haygood v. United Servs. Auto. Ass'n*, No. A-1-CA-36158, 2019 WL 4415247, at *6 (N.M. Ct. App. Sept. 5, 2019). "In most cases, the question of good faith is a question of fact for the jury." *Suggs v. State Farm Fire & Cas. Co.*, 833 F.2d 883, 891 (10th Cir. 1987).

Likewise, "a delay of any amount, if it is frivolous or unfounded, can constitute a breach of the insurer's duty to act honestly and in good faith." *Montoya v. Loya Ins. Co.*, No. CV 18-590 SCY/KBM, 2019 WL 1116010, at *6 (D.N.M. Mar. 11, 2019). However, "[a]n insurance company is justified in taking reasonable time and measures necessary to establish" whether to extend coverage. *Am. Nat. Prop. & Cas. Co.*, 2013-NMCA-013 at ¶ 13, 293 P.3d at 958. "The insurer's investigation does not need to be perfect, but reasonably appropriate under the circumstances." *Id.* (quotation marks omitted); *Haygood*, 2019 WL 4415247 at *6.

In the motion presently before the Court, Defendant argues that the Court should grant it summary judgment on Plaintiff's insurance bad faith claims because there is no evidence to support them. (Doc. 51 at 6.) More particularly, Defendant contends that there is no evidence that

it ever denied Plaintiff's UIM claim or that it acted with a "culpable mental state" in deciding the claim. (*Id.* at 6-7.) As to Defendant's first point, the foregoing law makes clear that an insurer need not explicitly or definitively deny a claim to commit insurance bad faith; rather, it may also do so by delaying or withholding payment of the claim, provided it acts frivolously or without foundation. *Woodmen Acc. & Life Ins. Co.*, 784 F.2d at 1056; *Montoya*, 2019 WL 1116010 at *6; *Travelers Ins. Co.*, 1977-NMCA-062 at ¶ 5, 90 N.M. at 557, 566 P.2d at 106. This necessarily encompasses Plaintiff's allegation that, by making a "low ball offer[]" to settle her claim, Defendant delayed or withheld payment of benefits to which she is entitled. (Doc. 55 at 3-4.) Thus, Defendant is not entitled to summary judgment merely because it did not expressly or conclusively deny Plaintiff's claim.

Defendant's second point requires a more intensive analysis. Defendant is correct that, to prevail on her bad faith claim, Plaintiff must show that Defendant delayed or denied payment of her UIM claim with "reckless disregard," *i.e.*, "an utter or total lack of foundation for an assertion of nonliability." *Jackson Nat. Life Ins. Co.*, 1992-NMSC-019 at ¶ 56, 113 N.M. at 419, 827 P.2d at 134. However, to be entitled to summary judgment, Defendant must do more than merely *assert* that Plaintiff's evidence on this point is insufficient. *See Hem*, 2010 WL 11434981 at *2. Rather, Defendant must "*show[]* the Court that the . . . evidence (viewed in the light most favorable to the nonmovant) is insufficient." *Id.* (emphasis in original). As explained below, Defendant has failed to make the requisite showing.

The parties appear to agree that, at its heart, this case involves "a dispute over the value of [Plaintiff's UIM] claim." (Doc. 51 at 6; Doc. 55 at 4.) The record establishes that Defendant offered to pay Plaintiff $2,000 to resolve the claim. (Doc. 51-8 at 1-2.) However, Defendant has failed to show that Plaintiff's evidence is insufficient to persuade a reasonable jury that this offer

was frivolous or unfounded. *Trainor*, 318 F.3d at 979. The record does reflect that, in his December 7, 2017 letter to Plaintiff's counsel, Mr. Blasingim justified Defendant's offer by claiming that Plaintiff had already been "fully compensated" because "all of her medical bills were paid by her healthcare provider" and she received $25,000 from the tortfeasor's insurer. (Doc. 51-8 at 1.)

However, Defendant has not made a prima facie showing that Mr. Blasingim's valuation of Plaintiff's UIM claim was reasonable. In particular, Defendant has presented virtually no evidence about the nature, extent, and duration of Plaintiff's bodily injuries resulting from the accident.[5] Without such evidence, it is impossible to assess whether Defendant's valuation of Plaintiff's claim, and thus its offer, were frivolous or unfounded. Defendant has therefore failed to "meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment" on Plaintiff's bad faith claim based on delay or denial of coverage. *Reed*, 312 F.3d at 1194. As such, the Court must deny Defendant's motion for summary judgment on this claim.

In her complaint, Plaintiff also alleges that Defendant committed insurance bad faith by: (a) failing and refusing to acknowledge that the UM/UIM policies in question apply; (b) failing to disclose and explain insurance policy stacking to Plaintiff; and, (c) failing and refusing to promptly investigate, process, and decide Plaintiff's UIM claim. (Doc. 1-2 at 5.)

To the extent that Plaintiff asserts an independent bad faith claim based on her allegation that Defendant wrongfully failed and refused to acknowledge the applicability of the pertinent

---

[5] In a March 9, 2018 letter to Defendant, Plaintiff's counsel asserted that Plaintiff's accident-related medical bills amounted to $19,026.71 and she "continue[d] to suffer from pain and loss of enjoyment of life." (Doc. 51-5 at 1.) However, the letter makes no further representations about the nature, extent, or duration of Plaintiff's injuries. (*See generally id.*)

UM/UIM policies, the Court is inclined to grant Defendant summary judgment on this claim. Initially, Plaintiff has cited, and the Court has located, no New Mexico caselaw holding that an insurer's failure or refusal to acknowledge a policy's applicability, standing alone, can be an independent basis for a bad faith claim. Also, the record presently before the Court shows that Defendant did not "fail" or "refuse" to acknowledge the pertinent policies' applicability; rather, it simply omitted any discussion of whether the pertinent policies applied or not. And, there is currently no record evidence that the alleged failure or refusal caused Plaintiff any harm separate or distinct from the alleged delay or denial of coverage.

However, Defendant did not raise any of these grounds as a basis for summary judgment; and, although Defendant moved for summary judgment on all of Plaintiff's bad faith claims, Plaintiff made no attempt to defend this particular claim in her response. (*See generally* Docs. 51, 55.) Thus, pursuant to Federal Rule of Civil Procedure 56(f), the Court hereby notifies the parties that it is inclined to grant Defendant summary judgment on Plaintiff's bad faith claim based on Defendant's alleged failure and refusal to acknowledge the applicability of the pertinent UM/UIM policies. However, each party may file a brief addressing whether the Court should grant summary judgment on this claim within ten (10) days of entry of this Memorandum Opinion and Order. *See* Fed. R. Civ. P. 56(f)(2) ("After giving notice and a reasonable time to respond, the court may . . . grant the motion [for summary judgment] on grounds not raised by a party."). The Court will consider any briefs the parties elect to file before ruling on Defendant's summary judgment motion as to this claim.

The Court is also inclined to grant Defendant summary judgment on Plaintiff's bad faith claim based on her next allegation, *i.e.*, that Defendant failed to explain "stacking" to her. "In the insurance context, to 'stack' coverage means to aggregate it." *Jaramillo v. Gov't Employees Ins.*

*Co.*, 573 F. App'x 733, 739 n.5 (10th Cir. 2014); *see also, e.g.*, *Wilkeson v. State Farm Mut. Auto. Ins. Co.*, 2014-NMCA-077, ¶ 7, 329 P.3d 749, 751 (stacking refers to "aggregating" coverages). The record presently before the Court includes no evidence that Plaintiff suffered any harm from Defendant's alleged failure to explain or disclose stacking to her. Rather, as discussed in more detail in Section IV.B., below, the record shows that Defendant offered to settle Plaintiff's claim for $2,000, not because it failed to stack Plaintiff's policies, but because it contended that the tortfeasor's insurer had already fully compensated Plaintiff. In these circumstances, it is difficult to conceive of how Defendant's alleged failure to explain or disclose stacking to Plaintiff could have harmed her.

In addition, the Court seriously questions whether an insured can state an insurance bad faith claim for damages based solely on the insurer's failure to explain or disclose stacking to the insured. "Stacking is a judicially-created doctrine" and is "understood . . . to be the remedy for an ambiguous contract or the charging of multiple premiums." *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶¶ 9, 17, 135 N.M. 681, 684, 686, 92 P.3d 1255, 1258, 1260. Thus, stacking—as opposed to bad faith damages—would appear to be the more appropriate remedy for an insurer's failure to explain or disclose stacking, as well.[6]

Again, however, Defendant did not raise any of these grounds as a basis for summary judgment on Plaintiff's bad faith claims; and, Plaintiff did not try to defend this particular bad faith claim in her response. (*See generally* Docs. 51, 55.) Thus, pursuant to Rule 56(f), the Court hereby

---

[6] The New Mexico Court of Appeals recently held that "an insurer has no duty to offer or explain stacking to a customer." *Ullman v. Safeway Ins. Co.*, 2017-NMCA-071, ¶ 15, 404 P.3d 434, 440, *cert. granted* (Aug. 24, 2017). This holding would also seem to indicate that an insured cannot state a bad faith claim based solely on an insurer's failure to explain stacking. However, the New Mexico Supreme Court granted certiorari in *Ullman* and, as of the date of filing of this Memorandum Opinion and Order, has not yet ruled on the questions presented in that case. The Court is therefore wary of relying on *Ullman* in deciding whether to grant Defendant summary judgment on Plaintiff's bad faith claim based on Defendant's alleged failure to explain or disclose stacking.

notifies the parties that it is inclined to grant Defendant summary judgment on Plaintiff's bad faith claim based on her allegation that Defendant failed to explain or disclose stacking to her. However, each party may file a brief addressing whether the Court should, in fact, grant Defendant summary judgment on this claim within ten (10) days of entry of this Memorandum Opinion and Order. The Court will consider any briefs the parties elect to file before ruling on Defendant's summary judgment motion as to this claim.

Regarding Plaintiff's allegation that Defendant committed insurance bad faith by failing and refusing to promptly investigate, process, and decide Plaintiff's UIM claim, the Court finds that Defendant has made a prima facie showing that it handled Plaintiff's claim in a timely manner.[7] As noted above, "[a]n insurance company is justified in taking reasonable time and measures necessary to establish" whether to extend coverage. *Am. Nat. Prop. & Cas. Co.*, 2013-NMCA-013 at ¶ 13, 293 P.3d at 958. Here, the undisputed material facts and record evidence show that the time Defendant took to handle Plaintiff's claim was reasonable. Specifically, the facts and evidence show that: (a) after Defendant received notice of the accident at issue, it began an investigation, as stated in a letter to Plaintiff dated seven days after the accident happened, (Doc. 51 at 3 ¶ 9; Doc. 51-2 at 1); (b) Defendant approved Plaintiff's proposed settlement with GEICO seven days after Plaintiff requested such approval, (Doc. 51 at 3 ¶¶ 11-12); (c) Defendant offered to settle Plaintiff's UIM claim seven days after it approved Plaintiff's settlement with GEICO, (*id.* at 3 ¶ 12; Doc. 55 at 3 ¶ 19); and, (d) Defendant waived subrogation less than three weeks after Plaintiff requested such waiver. (Doc. 51 at 4 ¶¶ 13-14.)

These facts and evidence satisfy Defendant's initial burden to show the absence of a genuine issue of material fact and its entitlement to summary judgment on Plaintiff's bad faith

---

[7] The Court treats Plaintiff's bad faith claims based on untimely claims handling and delayed coverage as two distinct claims because they involve two discrete acts, *i.e.*, processing Plaintiff's UIM claim versus paying it.

claim based on untimely claims handling. *Reed*, 312 F.3d at 1194. As such, the burden shifts to Plaintiff to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for her on the claim. *Adler*, 144 F.3d at 671. In her response, however, Plaintiff fails to address Defendant's evidence or offer any of her own. (*See generally* Doc. 55.) She also fails to argue that the law and/or the relevant circumstances required Defendant to process her claim more promptly than it did. (*Id.*) Plaintiff has therefore failed to carry her summary judgment burden, and the Court will grant Defendant summary judgment on Plaintiff's bad faith claim based on Defendant's alleged failure to handle her claim promptly.

To summarize, the Court will grant Defendant summary judgment on Plaintiff's insurance bad faith claim based on Defendant's alleged failure or refusal to promptly handle her UIM claim. The Court will deny Defendant summary judgment on Plaintiff's insurance bad faith claim based on Defendant's alleged delay or denial of coverage. Finally, the Court will take under advisement whether to grant Defendant summary judgment on Plaintiff's insurance bad faith claims based on Defendant's alleged failure or refusal to acknowledge the applicability of the pertinent UM/UIM policies and its alleged failure to explain or disclose stacking to Plaintiff.

**B.      Plaintiff's UCPA Claims**

The UCPA provides that certain insurance practices, "knowingly committed or performed with such frequency as to indicate a general business practice," are "unfair and deceptive practices" and are prohibited. N.M. Stat. Ann. § 59A-16-20. Such practices include: (1) "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies"; (2) "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear"; and,

(3) "failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." N.M. Stat. Ann. § 59A-16-20(C), (E), (N).

In her complaint, Plaintiff alleges that Defendant violated the UCPA by: (a) "[f]ailing to stack" the applicable UM/UIM policies; (b) "[f]ailing to adopt and implement reasonable standards for the prompt investigation and processing of Plaintiff's claim"; (c) "[f]ailing to attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear"; and, (d) "[f]ailing and refusing to arbitrate, mediate, resolve, and settle the subject claim." (Doc. 1-2 at 6.) Plaintiff also alleges that Defendant "fail[ed] to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."[8] (*Id.* at 7.) In its motion, Defendant contends that there is no evidence to support these claims. (Doc. 51 at 7.)

> As to Plaintiff's first allegation, Defendant argues that it
>
> was aware of three household policies and the available, stacked UM/UIM coverage available for the loss. But, merely having the coverage available does not mean one is entitled to every dollar of the stacked coverage. [Defendant] will evaluate the claim [and] the amounts already paid by the tortfeasor, and will then determine a range of value for the claim.

(*Id.* at 8.) Further, the undisputed material facts and record evidence show that Defendant offered to settle Plaintiff's UIM claim for $2,000, not because it failed to stack Plaintiff's policies, but rather because it contended that Plaintiff had already been fully compensated. (*Id.* at 4 ¶¶ 15-17; Doc. 51-8 at 1.) Defendant has therefore met its initial burden to show the absence of a genuine

---

[8] This allegation tracks the UCPA but appears in Count IV, which asserts claims under the UPA. N.M. Stat. Ann. § 59A-16-20(N); (Doc. 1-2 at 7.) Out of an abundance of caution, the Court will consider it under both statutes.

issue of material fact and its entitlement to summary judgment on this UCPA claim, and the burden shifts to Plaintiff to demonstrate the existence of a genuine, material factual dispute. *Reed*, 312 F.3d at 1194; *Adler*, 144 F.3d at 671.

In her response, however, Plaintiff fails to either address the evidence on which Defendant relies or offer any of her own. (*See generally* Doc. 55.) Plaintiff also fails to argue that the UCPA required Defendant to somehow stack the two applicable UM/UIM policies even though it valued her claim for less than the separate limit of either. (*Id.*) As such, Plaintiff has failed to carry her burden to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for her on this claim. *Adler*, 144 F.3d at 671. The Court will therefore grant Defendant summary judgment on Plaintiff's UCPA claim based on Defendant's alleged failure to stack Plaintiff's UM/UIM policies.[9]

Plaintiff's next allegation relies on the UCPA provision requiring insurers to "adopt and implement reasonable standards for the prompt investigation and processing of [an insured's] claim." N.M. Stat. Ann. § 59A-16-20(C). However, as discussed at greater length in Section IV.A., *supra*, Defendant has made a prima facie showing that it promptly investigated and processed Plaintiff's claim, thereby also making a prima facie showing that its standards for prompt investigation and processing were reasonable. And, in her response, not only has Plaintiff failed to present any evidence that Defendant handled her claim less than promptly, but also she has failed to identify any of Defendant's standards or explain how they were inadequate. *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1148 (D.N.M. 2010) (granting summary judgment on plaintiff's UCPA claim based on failure to adopt and implement reasonable standards for prompt

_____

[9] This holding should not be read to imply that Defendant's valuation of Plaintiff's claim, and thus its settlement offer, complied with the UCPA. On the contrary, as discussed below, the Court finds that Defendant has failed to show its entitlement to summary judgment on Plaintiff's UCPA claim based on its alleged failure to try to settle Plaintiff's claim fairly and equitably.

claims investigation and processing where plaintiff failed to "identify [defendant's] standards and show how they were inadequate"). Thus, again, Plaintiff has failed to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for [her]" on this claim. *Adler*, 144 F.3d at 671 (quotation marks omitted). The Court will therefore grant Defendant summary judgment on Plaintiff's UCPA claim based on Defendant's alleged failure to adopt and implement reasonable standards for the prompt handling of an insured's claims.

Plaintiff's third and fourth allegations supporting her UCPA claims concern Defendant's alleged failure to make good faith efforts to settle her UIM claim promptly, fairly, and equitably. (Doc. 1-2 at 6); *see* N.M. Stat. Ann. § 59A-16-20(E). An insurer violates the UCPA

> when it does not attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear. The Act does not require insurers to settle cases they reasonably believe to be without merit or overvalued. Any insurer that objectively exercises good faith and fairly attempts to settle its cases on a reasonable basis and in a timely manner need not fear liability.

*Hauff*, 755 F. Supp. 2d at 1148 (citations and quotation marks omitted); *cf. Dellaira v. Farmers Ins. Exch.*, 2004-NMCA-132, ¶ 18, 136 N.M. 552, 557, 102 P.3d 111, 116 (plaintiffs stated claim under UCPA where they alleged that defendant offered a lower than fair value for plaintiffs' vehicle and contracted with a company defendant knew had a reputation for offering such values).

Defendant argues that it is entitled to summary judgment on this UCPA claim because it made a settlement offer to which Plaintiff did not respond. (Doc. 51 at 9.) In so arguing, however, Defendant ignores the statutory requirement that its settlement offer be "fair and equitable" and made in "good faith." N.M. Stat. Ann. § 59A-16-20(E). As discussed in Section IV.A., *supra*, the record lacks sufficient evidence to allow the Court to hold, as a matter of law, that Defendant "objectively exercise[d] good faith and fairly attempt[ed] to settle [Plaintiff's UIM claim] on a

reasonable basis." *Hauff*, 755 F. Supp. 2d at 1148. Again, particularly crucial but virtually absent is any competent evidence regarding the nature, extent, and duration of Plaintiff's bodily injuries resulting from the accident. Without such evidence, it is impossible to assess the fairness and equity of Defendant's efforts to settle Plaintiff's claim. In short, Defendant is not entitled to summary judgment on this UCPA claim simply because it made a settlement offer to which Plaintiff did not respond.

Defendant also argues that it is entitled to summary judgment on this UCPA claim because there is no evidence that it acted either "knowingly" or "with such frequency as to indicate a general business practice." (Doc. 51 at 9); N.M. Stat. Ann. § 59A-16-20; *see* N.M. U.J.I. 13-1706 (defendant is liable for engaging in prohibited practice under the UCPA "if it acted knowingly or engaged in the practice[] with such frequency as to indicate that such conduct was its general business practice"); *Fava v. Liberty Mut. Ins. Corp.*, No. 17CV00456 WJ/LF, 2019 WL 133269, at *3 (D.N.M. Jan. 8, 2019) ("The [UCPA] requires proof that the claims-handling conduct complained of was knowingly committed or committed with such frequency that it constitutes a general business practice of the insurer."). However, in its motion, Defendant merely *asserts* that Plaintiff's evidence on this point is insufficient; it makes no effort to *show* the Court that it is. *Hem*, 2010 WL 11434981 at *2. As such, Defendant has failed to meet its initial burden of showing the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law on this point. *Reed*, 312 F.3d at 1194. The Court will therefore deny Defendant summary judgment on Plaintiff's UCPA claim based on Defendant's alleged failure to make good faith efforts to settle Plaintiff's UIM claim promptly, fairly, and equitably.

In its motion, Defendant does not specifically address Plaintiff's allegation that it violated the UCPA by failing to provide her with a prompt, reasonable explanation for its settlement offer.

(Doc. 51); *see* N.M. Stat. Ann. § 59A-16-20(N). It does, in its reply, refer to Mr. Blasingim's December 7, 2017 explanation for the offer, *i.e.*, "that Plaintiff received $25,000.00 from the tortfeasor's liability carrier, that her medical bills were paid in full, and that . . . it appeared she was already fully compensated for her injuries." (Doc. 58 at 4; *see* Doc. 51-8 at 1.) However, standing alone—as it currently does—this explanation is incomplete because it omits any indication of how or why Defendant valued Plaintiff's bodily injuries at $25,000.[10] As such, Defendant has presented insufficient evidence that its explanation was reasonable and has failed to meet its initial burden to show the absence of a genuine issue of material fact and its entitlement to summary judgment on this point. *Reed*, 312 F.3d at 1194. The Court will therefore deny Defendant summary judgment on Plaintiff's UCPA claim based on Defendant's alleged failure to provide her with a prompt, reasonable explanation for its settlement offer.

In sum, the Court will grant Defendant summary judgment on Plaintiff's UCPA claims based on Defendant's alleged failures to stack Plaintiff's UM/UIM policies and to adopt and implement reasonable standards for the prompt investigation and processing of Plaintiff's UIM claim. However, the Court will deny Defendant summary judgment on Plaintiff's UCPA claims based on Defendant's alleged failures to make good faith efforts to effectuate a prompt, fair, and equitable settlement of the claim and to provide Plaintiff with a prompt, reasonable explanation for its settlement offer.

## C. Plaintiff's UPA Claims

The UPA makes "[u]nfair or deceptive trade practices" unlawful. N.M. Stat. Ann. § 57-12-3. In pertinent part, the UPA defines an "unfair or deceptive trade practice" as

---

[10] Also, Mr. Blasingim offered this explanation before Defendant agreed to waive its right to subrogation, yet he failed to mention this right or acknowledge its potential impact on Plaintiff's ultimate recovery. (Doc. 51-6 at 1; Doc. 51-8 at 1.)

> a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person.

N.M. Stat. Ann. § 57-12-2(D). The UPA lists nineteen examples of unfair or deceptive trade practices, including: (1) "representing that . . . services have . . . benefits . . . that they do not have"; (2) "representing that . . . services are of a particular standard [or] quality. . . if they are of another"; and, (3) "failing to deliver the quality or quantity of . . . services contracted for." N.M. Stat. Ann. § 57-12-2(D)(5), (7), (17). "A litigant may bring claims under both the [UCPA] and the [UPA]." *Hauff*, 755 F. Supp. 2d at 1149.

To establish a UPA claim, a plaintiff must show that:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 439, 166 P.3d 1091, 1093 (citing *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 112 N.M. 97, 100, 811 P.2d 1308, 1311). "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson*, 1991-NMSC-051 at ¶ 17, 112 N.M. at 100–01, 811 P.2d at 1311–12. "The conjunctive wording of the statute itself requires an interpretation that the[se] four elements . . . must be present" in each of the nineteen specific examples listed in the UPA.[11] *Id.* at ¶ 14, 112 N.M. at 100, 811 P.2d at 1311.

---

[11] Thus, for example, mere failure to deliver the quality or quantity of goods or services contracted for does not establish a violation of the UPA; if it did, "every party found to have breached a contract by failure to deliver would be automatically liable for attorney fees and potentially liable for treble damages under" the Act. *Stevenson*, 1991-NMSC-051 at ¶ 11, 112 N.M. at 99, 811 P.2d at 1310. Rather, a misrepresentation knowingly made in connection with the sale must accompany the failure to deliver. *Id.* at ¶ 17, 112 N.M. at 100-01, 811 P.2d at 1311-12. For

According to Plaintiff, Defendant violated the UPA because it willfully "failed to perform in a manner consistent with its representations and contractual obligations." (Doc. 1-2 at 8.) More particularly, Plaintiff alleges that Defendant: (a) failed to promptly provide Plaintiff with a reasonable explanation for its settlement offer; (b) failed to acknowledge its obligations under the UM/UIM policies at issue; (c) failed to promptly and fairly handle Plaintiff's UIM claim; (d) represented that the policies had benefits or qualities that they lacked; (e) represented that the policies were of a particular standard or quality, when they were not; and, (f) failed to deliver the quality or quantity of coverage for which the parties contracted. (*Id.* at 7-8.)

In its motion, Defendant argues that it is entitled to summary judgment on these UPA claims because "alleged wrongful conduct occurring during the adjusting of an insurance claim does not fall within the [UPA's] protection." (Doc. 51 at 9.) More specifically, according to Defendant, Plaintiff's claims fall outside the UPA because there are no allegations or evidence that: (a) Defendant's alleged wrongful conduct occurred in connection with the sale of the applicable insurance policies; (b) Defendant made any false or misleading representations; or, (c) Plaintiff was misled by any information Defendant provided.[12] (*Id.* at 11.)

As noted above, to state a claim under the UPA, a plaintiff must allege that the defendant "knowingly made" a "false or misleading representation," and did so "in connection with the sale, lease, rental, or loan of goods or services." *Lohman*, 2007-NMCA-100 at ¶ 5, 142 N.M. at 439, 166 P.3d at 1093. The Court has carefully reviewed Plaintiff's complaint and finds in it no factual

---

example, in a bait-and-switch scenario, if a party advertises an item at a special price but only has a very limited amount of that particular item, "he should be aware that his advertising is misleading," and his failure to deliver will be actionable. *Id.*

[12] Defendant also argues that it is entitled to summary judgment on Plaintiff's UPA claims because Plaintiff "cannot show that the unidentified misrepresentations were a regular business practice of [Defendant]." (Doc. 51 at 11.) However, the UPA does not require a showing that the defendant had a regular business practice of making actionable misrepresentations; rather, it requires a showing that the defendant made the actionable misrepresentation at issue "in the regular course of the defendant's business." *Lohman*, 2007-NMCA-100 at ¶ 5, 142 N.M. at 439, 166 P.3d at 1093.

allegations at all regarding what, if any, representations Defendant made in connection with the sale of the applicable policies, or what Defendant knew or reasonably should have known about the truth or accuracy of any such representations when it made them. (*See generally* Doc. 1-2.) The Court therefore finds that Defendant has met its initial burden of demonstrating the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law on Plaintiff's UPA claims. *Reed*, 312 F.3d at 1194.

Because Defendant has met its initial summary judgment burden as to Plaintiff's UPA claims, the burden shifts to Plaintiff to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for her on these claims. *Adler*, 144 F.3d at 671. However, in her response, Plaintiff fails to make any arguments or present any evidence at all to support the claims. (*See generally* Doc. 55.) Indeed, she does not even mention them. (*Id.*) Certainly, she does not supply any specific facts or supporting evidence to demonstrate that Defendant (a) knowingly made (b) a false or misleading representation (c) in connection with the sale of an applicable policy, even though each of these elements is essential to each of her UPA claims. *Stevenson*, 1991-NMSC-051 at ¶ 14, 112 N.M. at 100, 811 P.2d at 1311; *Lohman*, 2007-NMCA-100 at ¶ 5, 142 N.M. at 439, 166 P.3d at 1093. Thus, Plaintiff has wholly failed to meet her burden of showing the existence of a genuine issue of material fact with respect to her UPA claims, and Defendant is entitled to summary judgment on these claims. *See Celotex Corp.*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## V. Conclusion

For the reasons stated herein, Defendant State Farm's Motion for Summary Judgment on Claims of Bad Faith, Violations of the Unfair Insurance Practices Act, § 59A-16-20 NMSA 1997, and Violations of the Unfair Trade Practices Act, §[§] 57-12-1 *et seq[.]* NMSA 2009 (Doc. 51) is GRANTED IN PART, DENIED IN PART, and TAKEN UNDER ADVISEMENT IN PART as follows:

A.      The Court GRANTS Defendant summary judgment on Plaintiff's insurance bad faith claim based on Defendant's alleged failure and refusal to handle Plaintiff's UIM claim promptly.  The Court DENIES Defendant summary judgment on Plaintiff's insurance bad faith claim based on Defendant's alleged delay or denial of coverage.  The Court TAKES UNDER ADVISEMENT whether to grant Defendant summary judgment on Plaintiff's insurance bad faith claims based on Defendant's alleged failure and refusal to acknowledge the applicability of the pertinent UM/UIM policies and its alleged failure to explain and disclose stacking to Plaintiff, pending consideration of any briefs the parties elect to file on these claims **within ten (10) days of entry of this Memorandum Opinion and Order**;

B.      The Court GRANTS Defendant summary judgment on Plaintiff's UCPA claims based on Defendant's alleged failures and refusals to stack Plaintiff's UM/UIM coverage and to adopt and implement reasonable standards for the prompt investigation and processing of Plaintiff's UIM claim.  The Court DENIES Defendant summary judgment on Plaintiff's UCPA claims based on Defendant's alleged failures to make good faith efforts to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim and to provide Plaintiff with a prompt, reasonable explanation for its settlement offer; and,

C.      The Court GRANTS Defendant summary judgment on Plaintiff's UPA claims.

IT IS SO ORDERED.

_____

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent